RICHARDSON v. WILSON. (No. 8077.)

(Court of Civil Appeals of Texas. Ft. Worth. May 1, 1915. Rehearing Denied May 29, 1915.)

1. EVIDENCE ☞460 — DOCUMENTARY EVIDENCE—PAROL EVIDENCE TO VARY.

Plaintiff entered into negotiations to buy a drug store, and at the same time defendant agreed to become a partner in the venture, and the sellers, pending negotiations, placed an agent in charge of the business, who was to run it for plaintiff's benefit in case the sale was consummated. After consummation of the sale, plaintiff conveyed a one-half interest of the business to defendant by bill of sale, guaranteeing him against all claims against the business. Held that, as the bill of sale was part of a larger transaction, parol evidence was admissible to show that the partnership between plaintiff and defendant actually existed from the time negotiations were begun, and that from such time defendant received the profits and became liable for his proportion of the expenses of the business.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2115–2128; Dec. Dig. ☞460.]

2. PARTNERSHIP ☞53—ACTIONS—EVIDENCE—SUFFICIENCY.

Evidence held to show that from the time plaintiff began negotiations for the acquisition of a drug business, and an agent who was to run it for his benefit was placed in charge, he and defendant were partners.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 76, 79; Dec. Dig. ☞53.]

3. TRIAL ☞351 — ACTIONS — SUBMISSION OF ISSUES.

Where complicated accounts arising out of several business transactions were in issue, and the court submitted the issue as to what amounts were due and unpaid by defendant on the H. & L. account, the refusal of a special issue as to what amounts were paid to H. & L. on account of plaintiff was not error; the jury finding that $103 was paid, and defendant making no complaint of the finding in his motion for new trial.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 829, 834–839; Dec. Dig. ☞351.]

4. SALES ☞77 — CONTRACT OF SALE — CONSTRUCTION.

Where a contract of sale, which included all accounts in favor of the business, provided that the stock of merchandise was to be invoiced at actual cost, and the seller's interest

was to be paid for in cash, less 5 per cent., the discount applied to accounts receivable.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 208–212; Dec. Dig. ☞77.]

5. BROKERS ☞65—COMPENSATION—COMMISSIONS.

Where a broker represented the opposite party and made misrepresentations to plaintiff, who had agreed to pay him commission, he cannot recover the agreed commissions from plaintiff.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 48–50; Dec. Dig. ☞65.]

6. SUBROGATION ☞26—RIGHT TO SUBROGATION.

Where the seller of an interest in a business declined to pay the broker the agreed commission, and did not authorize the buyer to do so, the buyer has no right to pay the commission and, having paid it, cannot recover from the seller.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 67; Dec. Dig. ☞26.]

7. TRIAL ☞192 — INSTRUCTIONS—ASSUMING FACTS—REVIEW—HARMLESS ERROR.

A charge making an assumption of an undisputed fact is harmless.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 432–434; Dec. Dig. ☞192.]

8. TRIAL ☞191—INSTRUCTIONS—ASSUMPTION OF FACTS.

A charge directing the jury to return an answer to a special issue submitted is not erroneous as assuming facts in issue.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. ☞191.]

9. TRIAL ☞220—INSTRUCTIONS.

The action of the court in directing the jury to return an answer to a special issue is not in violation of Acts 33d Leg. c. 59, requiring the court's instructions to be submitted to the jury before argument.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 506; Dec. Dig. ☞220.]

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Action by J. A. Wilson against T. I. Richardson and another. From a judgment for plaintiff against the named defendant, he appeals. Reformed and affirmed.

Ramsey & Odell and H. P. Brown, all of Cleburne, and R. S. Phillips, of Ft. Worth, for appellant. S. C. Padelford, of Cleburne, and P. E. Johnson, of Stockdale, for appellee.

CONNER, C. J. This suit was instituted by the appellee against the appellant, T. I. Richardson, and J. M. Senter, to recover damages for alleged fraudulent representations of the value of a one-half interest in a grocery store at Lillian, Tex., given in exchange by Richardson to Wilson for the fixtures of a stock of drugs at Ft. Worth, Tex., and to recover an alleged balance due on the sale of the stock. The trial resulted in a judgment in favor of the plaintiff against the defendant Richardson for the sum of $1,370.-38. The judgment, however, altogether discharged the defendant Senter.

The controlling question presented on this appeal from said judgment by the defendant Richardson arises from rulings of the trial court in the introduction of evidence. That this ruling may be understood it will be necessary to state, in an introductory way, that during the year 1911 a firm doing business in the name of Lowe Bros. advertised their stock of drugs at Ft. Worth for sale or exchange; that finally, appellee, being induced by the contract of the appellant Richardson to take a one-half interest, agreed with Lowe Bros. to exchange an equity in certain land owned by him in Johnson county for the stock of drugs referred to at an agreed valuation of $8,500. This agreement with Lowe Bros. was executed on the 18th day of November, 1911. It provided, so far as necessary to state, that Wilson was to furnish abstracts of title to his land; that Lowe Bros. should in all respects comply with the Bulks Sales Law of Texas in regard to the sale of drugs and furnish Wilson, at the time of the consummation of the trade, an agreement signed by each and all of the creditors of Lowe Bros. agreeing to the sale. It further provided that, until the consummation of the sale, Tom G. Schultz, the manager of Lowe Bros.' business, should remain in charge of the stock and immediately open a new set of books, keep strict account of receipts and disbursements, and not to incur any expense, except in the ordinary and usual conduct of the business. It further provided that, if the trade was finally consummated, the said Schultz should account to Wilson for his conduct of the business and deliver to him the stock of drugs, furniture, and fixtures, together with all receipts of the business from the date of the contract, but that, if the trade should not be consummated, then the said Schultz should account to Lowe Bros. On the same day Richardson and Wilson entered into a written contract, wherein, so far as necessary to state, it was provided that:

"T. I. Richardson, for the consideration hereinafter named, hereby bargains and sells and agrees to convey by general warranty deed to J. A. Wilson 103 acres of land in Johnson county, Tex., and fully described in a deed executed by C. F. and Mattie Smith to T. I. Richardson, dated November 18, 1911, to which reference is here made."

In consideration of which, among other things, Wilson agreed—

"to transfer and deliver to T. I. Richardson an undivided one-half interest in a stock of drugs and fixtures located 900 Houston street, Ft. Worth, Tex., this day contracted to be sold to J. A. Wilson by H. P. and J. E. Lowe."

The contract provided that Richardson should furnish an abstract of title to Wilson of the 103 acres of land mentioned, and further recited that:

"This trade is made on the condition that the contract this day made between J. A. Wilson and H. P. and J. E. Lowe shall be consummated; in the event said trade shall not be consummated, then this contract shall be null and void."

On the 7th day of December thereafter the contract between Lowe and Wilson was fully consummated, whereupon Wilson, in consider-

ation of the conveyance of the 103 acres of land mentioned in the Wilson-Richardson contract of November 18, 1911, executed and delivered to Richardson the following bill of sale:

"Know all men by these presents, that I, J. A. Wilson, of Tarrant county, Tex., in consideration of $4,000 cash to us paid by T. I. Richardson, receipt of which is hereby acknowledged, have transferred, bargained and sold, and by these presents transfer, bargain and sell, unto the said T. I. Richardson, of Johnson county, Tex., the following described property situated in the city of Ft. Worth, Tex., to wit: The same being one-half interest in the business known as the Ft. Worth Pharmacy, situated at the southwest corner of Houston and Eighth streets, Ft. Worth, Tex., including the entire stock of merchandise, together with all furniture and fixtures in said place of business, at No. 900 Houston street, including also the furniture and fixtures in the basement of said place or building, except electric motor and electric clock. The grantor warranting title to all the property hereby conveyed and warrant and guarantee against all claims of any character against the said property or said business, according to bill of sale conveyed to me by Lowe Bros. To have and to hold the said business, merchandise, furniture, and fixtures unto the said T. I. Richardson, his heirs and assigns forever."

Wilson and Richardson thereupon, as partners, entered upon the prosecution of business as druggists, Schultz having fully accounted to Wilson as provided in the contract between Wilson and Lowe Bros., and continued the prosecution of said business until the 19th day of December, 1911, when Wilson sold the one-half interest that had been retained by him to Richardson. The contract then made between them was as follows:

"Know all men by these presents, that I, J. A. Wilson, of Johnson county, Tex., transfer, bargain and sell unto T. I. Richardson, of Johnson county, Texas, my undivided one-half interest in the business known as the Ft. Worth Pharmacy, at the corner of Eighth and Houston streets, Ft. Worth, Tex., together with all furniture and fixtures in said place of business. It is hereby understood that the fixtures are to be invoiced at $5,000, and J. A. Wilson discounts his one-half interest in fixtures 50 per cent., or a total of $1,250; the remainder of the stock of merchandise in the store to be invoiced at actual cost of same, J. A. Wilson's interest to be paid for in cash, less 5 per cent. I hereby acknowledge the receipt of $1,250 this day paid to me to apply upon the foregoing bill of sale and contract. All the accounts to date in favor of said business are to be included in invoice, and the indebtedness upon same, after being deducted from said invoice, the result shall conclude the total inventory. It is further and mutually agreed that the said T. I. Richardson hereby agrees to assume and release the said J. A. Wilson from any and all debts that may have accrued against the firm of Wilson & Richardson, including lease on said building, No. 900, corner Eighth and Houston streets, which is now under lease to said firm.

"Given under our hands this the 19th day of December, A. D. 1911.

"J. A. Wilson.
"T. I. Richardson,
"By J. M. Senter."

At the time of this contract, no cash was paid; the $1,250 acknowledged by Wilson to have been paid being represented by Richard-son's interest in a grocery store at Lillian, Tex., referred to in the beginning of this opinion, and then represented to Wilson as being of the value of $1,250.

An auditor was appointed by the court with instruction to find the amount of merchandise in the drug store on hand on December 19, 1911, at actual cost, less 5 per cent., exclusive of the furniture or fixtures belonging to said business, the different amounts of the accounts receivable and accounts payable on said date, the amount of cash on hand on said date, and then to strike balances and find the value of J. A. Wilson's interest in the stock of merchandise on hand at the time of the sale. The auditor reported a balance of $1,432.32 due to Wilson for his interest in the stock of merchandise on December 19th. This balance, plus $900 damages, found in a special verdict of the jury under the court's instructions to be the difference in the value in the stock of groceries at Lillian as it existed on the 19th day of December, 1911, and as it was represented to be, minus certain credits found by the court, aggregating $962.14, was made the basis of the judgment, which, as before stated, was for the sum of $1,370.38.

[1, 2] Among the items charged to Richardson in the auditor's report and approved by the court was an aggregated item of $512.13, made up of debts of the drug business that accrued during the administration of Schultz, and it is about this item and several other minor items of like character that the principal questions in this case cluster. In its final analysis, appellant's insistence is, briefly stated, that the items referred to are included among the claims against which appellee warranted in his bill of sale dated the 7th day of December, 1911, and hence should not have been charged to him in the report of the auditor. Appellee's contention was and is, in substance, that these items constituted debts of the firm of Wilson & Richardson, and hence were not debts guaranteed against by Wilson in the bill of sale dated December 7th, but were debts assumed by Richardson in the contract of December 19th.

In support of appellee's contention above noted, he sought to show, and was permitted to show, that on the 18th day of November, when he and Lowe Bros. entered into the written contract hereinbefore described, and he and Richardson entered into the contract of the same day also before mentioned, it was further, on the same day, orally agreed by Wilson and Richardson that Schultz should take charge of the Lowe stock of drugs and manage the business, as provided in the Wilson-Lowe contract, in the interest of both Wilson and Richardson. Certain declarations of the parties at the time were also offered and admitted as tending to show a partnership relation. Also evidence tending to show that on the 7th day of December, when the formal transfer to Richardson's half interest was made, the cash and bills re-

ceivable accruing during the Schultz management went into and were accepted by the firm of Wilson & Richardson as if the partnership between Wilson and Richardson was then and had theretofore been an existing relation. There may have been some other evidence tending to establish the partnership as alleged, but, without further specification, it may be said generally that the whole was offered and admitted in support of appellee's allegation that the partnership relation between Wilson and Richardson had existed, in substance and in spirit, from November 18, 1911, when the written contracts made on that day were executed. To all such testimony appellant objected on the ground that there were no allegations of fraud, accident, or mistake in the execution of the bill of sale of December 7th; that this instrument embodied the contract between them, and that an oral contract of an antecedent partnership could not be ingrafted thereon; that proof of such partnership for the purpose offered was in contradiction of the specific unambiguous terms of the guaranty of Wilson in the instrument dated December 7th against "all claims of any character against the said property of said business."

The general rule of law embodied in appellant's objections, as above noted, is well settled, but, as is also well settled, the rule has its exceptions. Says Mr. Justice Rice (citing numerous authorities) in the case of Landrum v. Stewart, 111 S. W. 769:

"The rule excluding parol evidence when offered to contradict or vary the terms, provisions, or legal effect of a written instrument has frequently been held to have no application to collateral undertakings, nor to cases in which the written instruments were executed only in part performance of an entire oral agreement. Where the note or written instrument is only part of a more comprehensive agreement or transaction, then the rule contended for by appellee does not apply; and it is always permissible, under such circumstances, to introduce parol evidence to show what, in fact, was the contract or agreement between the parties."

The following authorities are to the same effect and may be consulted with profit, viz.: Thomas v. Hammond, 47 Tex. 42; Chicago, etc., Bank v. Chicago, etc., Co., 190 Ill. 404, 60 N. E. 586, 83 Am. St. Rep. 138; Wilson v. Roots, 119 Ill. 379; 10 N. E. 204; Missouri Ry. Co. v. Doss, 36 S. W. 497; Well Plow Co. v. Evans, 24 S. W. 38; Davis v. Sisk, 49 Tex. Civ. App. 193, 108 S. W. 472; Masterson v. Burnett, 27 Tex. Civ. App. 370, 66 S. W. 90.

Adopting and approving as applicable herein the law as stated in the quotation last above made, we are of the opinion that the trial court ruled correctly, and that appellant's assignments objecting to the character of testimony noted should be overruled. There was testimony tending to show that appellee refused to buy the stock of drugs on any terms, unless he could secure a partner to take a half interest, and it seems evident to us, from the evidence as a whole, that the several contracts of November 18th and of December 7th were but distinct parts of a more comprehensive agreement; that the bill of sale of December 7th was but a consummation of the contracts executed on the 18th day of November. If so, the instrument and guaranty executed by appellee on the 7th day of December is to be construed in the light of all of the circumstances attending the several transactions, and, as so construed, the guaranty should be held to apply as if operative contemporaneously with the preceding written contracts, or at least that it should be construed as a guaranty against those debts only of the drug business that existed at the time the stock was placed, by the agreement of all parties, under the management of Schultz. Added force is given to this construction by the fact shown that, at the termination of the Schultz management, the firm of Wilson & Richardson at once assumed the control, and received the benefit of the cash and bills receivable accruing during the Schultz administration. This fact seems inconsistent with the contention that the business during that period was that alone of Wilson, for in such case no explanation is given of why Wilson did not appropriate to himself all cash and bills receivable; it further appearing in this connection that the cash and bills receivable exceeded the indebtedness of the business as incurred by Schultz. The construction indicated is further fortified, as it seems to us, by the very terms of the guaranty relied upon by appellant. Appellee's guaranty was "against the said property of said business according to bill of sale conveyed to me by Lowe Bros." This bill of sale to Wilson by Lowe Bros. is not found in the record. But it was presumably in accord with the original contract between Wilson and Lowe Bros., which it will be remembered, among other things, guaranteed that Lowe Bros. should comply with the Bulk Sales Law, and gain the consent of all of their creditors to the sale, thus raising the inference that the creditors of Lowe Bros. were satisfied at the time of appellee's bill of sale to appellant, and that the guaranty noted was intended to give written assurance to Richardson of this fact.

It follows from the foregoing conclusions that the indebtedness of the business incurred under the management of Schultz, aggregating $512.13, was properly charged to Richardson by the auditor, and that the court did not, in this respect, err in approving the auditor's report.

[3] In the ninth assignment objection is made to the court's charge on the ground that it omits the submission of the issue of a $315 credit pleaded by the defendant. The following special issue on the same subject was requested and refused, viz.: "What amounts were paid by the defendant Richardson to Hutton & Lowe for or on account of the plaintiff?" Senter testified that he had, for Richardson, paid to Hutton & Lowe, on orders signed by Wilson, amounts aggregat-

ing $310, and there was further testimony to the effect that Wilson had agreed to pay Hutton & Lowe commissions on the Lowe Bros. purchase to the amount of some $300. We find, however, that the court, among others, did submit the following special issue: "What amounts are due or unpaid by defendant Richardson on the Hutton & Lowe account?" To this issue the jury answered "$103.11," to which answer no complaint was made by appellant in his motion for a new trial. It further appears in the court's judgment that Richardson was allowed credits, as before stated, aggregating $962.14, including $200 commissions paid to Senter, and the item of $103.11 returned in the special finding already noted. The record is quite voluminous, and the question under consideration is perhaps not as clear to us as it should be; but, so far as we have been able to determine from the record, we conclude that the special issue submitted by the court substantially comprehends the one requested, and that the answer of the jury thereto presents all the credit on the Hutton & Lowe account to which appellant Richardson is entitled.

The item of $109.92 debited to Richardson in the auditor's report it is insisted in appellant's tenth assignment should have been credited to Richardson instead of debited. This item, however, consisted of an indebtedness for rent accruing during the Schultz management, and which hence, according to conclusions hereinbefore announced, was properly charged to Richardson. The same conclusion and reasoning applies to the items of $56.64 and of $61.22 charged to Richardson by the auditor, and of which complaint is made in the eleventh and twelfth assignments.

[4] It will be remembered that in the contract of December 19, 1911, when Wilson conveyed a remaining one-half interest in the stock of drugs, etc., to Richardson, it was provided, among other things, that the stock of merchandise in the store was to be invoiced at actual cost, and Wilson's interest therein was to be paid for in cash, "less 5 per cent." A further provision of the contract was that:

"All the accounts to date in favor of said business are to be included in the invoice, and the indebtedness upon same, after being deducted from said invoice, the result shall conclude the total inventory."

The auditor in stating the account deducted 5 per cent. from the merchandise only, and appellant insists that this 5 per cent. reduction should also have been applied to the bills receivable, and the majority have concluded that a proper construction of the contract between Richardson and Wilson, dated December 19th, supports this contention.

The thirteenth assignment will therefore be sustained, and the judgment herein will be so reformed as to allow a credit to Richardson of 5 per cent. of the amount of bills receivable, amounting to $22.59, with interest thereon from December 19, 1911.

[5] Among other credits or offsets claimed by appellant was an item of $100 paid by Richardson to Senter and claimed by Senter as commissions due from Wilson in making the sale of appellant's remaining interest in the drug business on December 19th. The jury found in answer to a special issue that Wilson had promised Senter $100 for making the trade, but, in entering the judgment in this case, the court refused to include this item among the credits given to appellant on the ground that:

"The jury having found as a distinct fact that the sale of defendant Richardson's one-half interest in said stock of groceries by Senter to plaintiff was fraudulent, the court disallows the $100 claimed as commission by said Senter for making the particular sale or exchange of said one-half interest in said stock of groceries."

Complaint is made of this action of the court in appellant's fourteenth assignment, but we think the assignment should be overruled. The evidence shows that Senter was the active participant in this sale and seems to have really represented Richardson rather than Wilson; and, while denied by Senter, the evidence abundantly supports the conclusion that he grossly misrepresented the value of the stock of groceries at Lillian, which formed a part of the consideration moving from Richardson to Wilson in the sale of December 19th, and we fail to see, under such circumstances, what equity there would be in compelling Wilson to perform the promise.

[6] Moreover, in addition to the reasons given by the trial court, the evidence distinctly shows that Wilson refused to pay this item, and wholly fails to show that Wilson gave Richardson any authority to pay Senter.

[7] The fifteenth assignment has been waived in behalf of appellant, and the sixteenth and seventeenth, in which complaint is made of the third paragraph of the court's charge, will be overruled for the reason that we think it unlikely that the jury were misled by the charge, so as to exclude the fixtures in the store at Lillian in their determination of the reasonable market value of the stock of groceries. The same paragraph of the court's charge is complained of in the eighteenth, nineteenth, and twentieth assignments, on the ground, in substance, that it assumes that Richardson would be liable for the misrepresentations of Senter in the sale of the Lillian stock of groceries, irrespective of whether Senter was at the time acting for Richardson. But, if the paragraph of the charge is susceptible of this construction, we think it harmless at all events, as the evidence seems to be undisputed to the effect that Senter did act for Richardson in making the sale of the Lillian stock of groceries, and in that matter was evidently acting in his interest. Nor do we think the paragraph subject to the criticism that it is on the

weight of the evidence in assuming that the plaintiff Wilson relied on representations in his purchase of the Lillian stock of groceries. The paragraph as a whole very plainly, we think, submits the question of Wilson's reliance upon these representations to the plaintiff.

[8, 9] We think the action of the court complained of in the twenty-second and twenty-third assignments of error, on the whole, amounts to no more than a direction to the jury to return to the jury room and to make and return answer to a special issue which had been submitted to them in the general charge, but to which the jury had failed to return an answer. Such an instruction is not, as we think, either on the weight of the evidence or in violation of that provision of amending laws of 1913 requiring the court's instruction to be submitted to the jury before argument. See General Laws 1913, p. 113. All assignments relating to this action on the part of the court are accordingly overruled.

There are a number of other assignments, but we think they are sufficiently disposed of by what has already been said, and we will accordingly overrule them without extending this opinion by a more particular notice.

It is accordingly ordered that the judgment below be reformed, so as to allow appellant Richardson the credit to which he is entitled, as hereinbefore specified, and that, as so reformed, the judgment will be affirmed, at appellee's cost.