RICHARDSON v. WILSON. ·(No. 87–2867.)

(Commission of Appeals of Texas, Section B. June 21, 1919.)

1. EVIDENCE ⬤⟾450(8)—PAROL EVIDENCE— AMBIGUITY—CONTRACT OF SALE.

A contract transferring a half interest in a drug business, including the stock of merchandise, furniture, fixtures, etc., and guaranteeing the grantee "against all claims of any character against the said property or said business according to bill of sale conveyed to me by Lowe Brothers," *held* so ambiguous as to authorize admission of parol evidence relative to prior agreements and transactions to explain it.

2. EVIDENCE ⬤⟾445(2)—PAROL EVIDENCE— SUBSEQUENT CONTRACT.

When a conveyance is made to carry out a prior executory agreement, the two agreements, though not contemporaneous, are part of the same transaction, and, if there is any doubt as to the intention as evidenced by the conveyance, the prior agreement is admissible to aid in ̇the construction of the conveyance.

3. TRIAL ⬤⟾350(3)—REFUSAL TO SUBMIT ISSUES—SET-OFF.

In an action for fraudulent representations in sale of interest in a stock of groceries and for a balance due under a contract whereby such groceries were exchanged for defendant's interest in a drug business, it was error to refuse to submit an issue as to the amount paid by defendant to a third party on plaintiff's account pleaded as an offset, in view of the evidence.

4. BROKERS ⬤⟾65(4)—AGENT'S COMMISSIONS —KNOWLEDGE OF FRAUD.

If plaintiff, who sold an interest in a drug business to defendant for a grocery stock, knew,

---

when he requested defendant to pay a commission to plaintiff's agent, that the agent had fraudulently represented to him, plaintiff, the value of· defendant's stock, defendant is entitled to set-off payment so made in plaintiff's suit to recover a balance under the contract, but otherwise if payment was made without plaintiff's knowledge of the agent's fraud.

5. PRINCIPAL AND AGENT &#10209;158—FRAUD OF AGENT—AGENT'S PERSONAL LIABILITY.

An agent who makes fraudulent representations as to merchandise sold is liable personally for his own fraud, regardless of whether he acts for a principal or for himself.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by J. A. Wilson against T. I. Richardson and another. Judgment for plaintiff, and, on appeal to the Court of Civil Appeals by defendant named, the judgment was reformed and affirmed (178 S. W. 566), and defendant brings error. Reversed and remanded as recommended by the Commission of Appeals.

R. S. Phillips, of Ft. Worth, and Ramsey & Odell and H. P. Brown, all of Cleburne, for plaintiff in error.

F. E. Johnson and S. C. Padelford, both of Cleburne, for defendant in error.

MONTGOMERY, P. J. J. A. Wilson brought this suit against T. I. Richardson and J. M. Senter to recover damages for alleged fraudulent representations as to the character and value of a certain stock of groceries at Lillian, Tex., which Wilson had received from Richardson in part payment for Wilson's interest in a drug business at Ft. Worth. The plaintiff also sought a recovery against said Richardson of a balance alleged to be due by ,Richardson under a contract ·by which Wilson sold to Richardson his interest in the drug business. There was a trial by jury upon special issues, and upon the verdict the court rendered judgment for the plaintiff for $1,370.38.

Richardson appealed, and the Court of Civil Appeals reformed the judgment by allowing Richardson certain credits not allowed by the trial court, and affirmed the judgment as so reformed. 178 S. W. 566. For a proper understanding of the case, it is necessary to state the history of the series of transactions out of which the controversy arose.

In 1911, Lowe Bros. advertised a stock of drugs then owned by them at Ft. Worth, Tex., for sale or exchange. Wilson negotiated with them to exchange certain lands owned by him for the drug business, and agreed to make the exchange provided he could find a suitable partner who would take a half interest in the drug business. T. I. Richardson, who was informed of the proposed trade, agreed with Wilson that if Wilson acquired the stock of drugs he would take a half interest in the drug store and would convey to Wilson ,in part payment his equity in a· tract of land.

The contracts between Lowe Bros. and Wilson, and between Wilson and Richardson,. were both reduced to writing at the same time and were contemporaneous instruments. These contracts were dated November 18, 1911.

By the contract between Lowe Bros. and Wilson, Lowe Bros. agreed to take two tracts of land, aggregating 214¼ acres, at the agreed price of $65 per acre. In payment for this land, Lowe Bros. assumed certain indebtedness against the land, executed a vendor's lien note to Wilson, and sold and delivered to Wilson the drug business at the agreed price of $8,500.

The contract contains provisions for furnishing abstract of title and the approval of same before the trade should be finally closed, and Lowe Bros. agreed to comply with the bulk sale law and procure the consent of all their creditors to the sale.

Pending the consummation of this sale, it was agreed that Tom G. Schultz should remain in charge of the drug store, and that he should at once open a new set of books and keep a strict account of receipts and disbursements and incur no extraordinary expense, and that if the trade should be finally closed he should account to Wilson and deliver to him the entire business with the receipts of the same from the date of the contract, but if not closed he should in like manner account to Lowe Brothers. Wilson was to assume the lease contract on the building occupied by the drug store.

By the contract between Wilson and Richardson, Richardson agreed to convey to Wilson 183 acres of land owned by him; Wilson assuming certain indebtedness against it in payment for a one-half interest in the drug business referred to in the contract between Lowe Bros. and Wilson.

There was provision for abstract of title and an examination of the same, and this further provision:

"This trade is made on the condition that the contract this day made between J. A. Wilson and H. P., and J. E. Lowe, shall be consummated. In the event that trade ·shall not be consummated, then this ·contract shall be null and void."

The trade between Lowe Bros. and Wilson was consummated on December 7, 1911, and the drug business transferred to Wilson, and on the same day the trade between Wilson and Richardson was also closed, and Wilson executed and delivered to Richardson the following bill of sale:

"Know all men by these presents: That I, J. A. Wilson, of Tarrant county, Texas, in con-

sideration of four thousand dollars cash to us paid by T. I. Richardson, receipt of which is hereby acknowledged, have transferred, bargained and sold and by these presents transfer, bargain and sell unto the said T. I. Richardson of Johnson county, Texas, the following described property situated in the city of Ft. Worth, Texas, to wit: The same being one-half interest in the business known as the Ft. Worth Pharmacy, situated at the S. W. corner of Houston and 8th Sts., Ft. Worth, Texas, including the entire stock of merchandise, together with all furniture and fixtures in said place of business, at No. 900 Houston street, including also the furniture and fixtures in the basement of said place or building except electric motor and electric clock.

"The grantor warranting title to all the property hereby conveyed and warrant and guarantee against all claims of any character against the said property or said business according to bill of sale conveyed to me by Lowe Brothers.

"To have and to hold the said business, merchandise, furniture and fixtures unto the said T. I. Richardson, his heirs and assigns forever."

Wilson and Richardson after December 7, 1911, conducted the drug store as partners until December 19, 1911, at which time Wilson and Richardson entered into a written contract (Richardson's name being signed by J. M. Senter), by which Wilson sold and transferred to Richardson his "undivided one-half interest in the business known as the Ft. Worth Pharmacy, together with all the furniture and fixtures in said place of business." The contract contains the following other provisions:

"It is hereby understood that the fixtures are to be invoiced at five thousand dollars, and J. A. Wilson discounts his one-half interest in fixtures fifty per cent., or a total of $1,250.00; the remainder of the stock of merchandise in the store to be invoiced at actual cost of same, J. A. Wilson's interest to be paid for in cash, less five per cent.

"I hereby acknowledge the receipt of $1,250.00 this day paid to me to apply upon the foregoing bill of sale and contract.

"All the accounts to date in favor of said business are to be included in invoice, and the indebtedness upon same, after being deducted from said invoice, the result shall conclude the total inventory.

"It is further and mutually agreed that the said T. I. Richardson hereby agrees to assume and release the said J. A. Wilson from any and all debts that may have accrued against the firm of Wilson & Richardson, including lease on said building, No. 900, corner 8th and Houston streets, which is now under lease to said firm." (S. F. pp. 14, 15.)

There was no cash paid in fact, but Wilson agreed to accept in lieu of the recited cash consideration of $1,250 an undivided one-half interest in a stock of groceries at Lillian, Tex.

This contract was closed, and Richardson took possession of the drug business and Wilson of the grocery stock; but there was no final settlement between Wilson and Richardson as to the purchase price. This suit was brought by Wilson to recover a balance alleged to be due him for the one-half interest in the drug business and for damages on account of fraudulent representations alleged to have been made with reference to the stock of groceries. Both Richardson and Senter were made defendants, but judgment was recovered against Richardson only.

As to the action for fraud and deceit, Richardson denied all the allegations and denied that Senter, by whom the representations were made, was his agent or had any authority to represent him. As to the action for the balance claimed to be due under the contract, he pleaded certain payments made by him to Wilson and to others by Wilson's direction, and also claimed that certain indebtedness incurred for merchandise and expenses between the 18th day of November, 1911, the date of the contract between Lowe Bros. and Wilson, and December 7, 1911, the date of the bill of sale from Wilson to Richardson, should be paid by Wilson alone, and that Richardson was not liable for such debts. As to this branch of the case, the controversy grows out of the fact that Wilson, in fixing the amount to be paid by Richardson under his second contract, contended that Richardson was liable for one-half of the indebtedness incurred by Schultz while conducting the business between the dates above named, while Richardson contended that these debts and obligations were Wilson's only, and that under the terms of the bill of sale to him of December 7th, Wilson had warranted against such debts.

Other facts will be stated in the opinion.

### Opinion.

The pleadings, we think, were sufficient, and, without discussing the questions involving the sufficiency of the pleadings to authorize the admission of the testimony and support the judgment rendered, we will consider the case on its merits.

Between November 18, 1911, and December 7, 1911, Schultz, who conducted the business as provided in the contract between Lowe Bros. and Wilson, incurred an indebtedness to the amount of $1,373.35. The rent, insurance, and other expenses which accrued between the period the business was managed by Schultz amounted to about $455. Under the second contract between Wilson and Richardson, Richardson contends that these items should not be treated as obligations of the firm of Wilson & Richardson, but should be charged to Wilson and paid by him. The lower court and the Court of Civil Appeals both held that, under the first contract between Wilson and Richardson, Richardson took a one-half interest in the business as of the date of the alleged contract, that is, November 18, 1911, and that

the expenses of the business from that date were properly charged to the firm of Wilson & Richardson, and that the profits growing out of the business during said period belonged to Wilson & Richardson.

The contention of Richardson is based upon the proposition that the instrument of date December 7, 1911, by which Wilson transferred to him one-half interest in the business, evidenced a complete contract, and by it all prior agreements were superseded, and that the warranty contained in said instrument of date December 7th is plain and unambiguous, and that by its terms Wilson warranted against all claims of every character against the business and property transferred. Upon this theory, objection was made by Richardson to all testimony offered by Wilson as to the prior contracts and to parol evidence showing the negotiations between the parties. These objections were overruled, and the prior agreements between Wilson and Lowe Bros., and between Wilson and Richardson, as well as verbal communications between the parties, were admitted as evidence.

Wilson insists that the testimony was admissible upon two theories: First, that the written transfer did not evidence the complete agreement of the parties, but was an instrument executed in part performance of a comprehensive agreement of the parties covering the entire transaction, and that, therefore, evidence of the prior agreement was admissible. Second, that the transfer of December 7, 1911, from Wilson to Richardson, is upon its face, and when read in the light of the circumstances under which it was made, ambiguous, and therefore the evidence was admissible to show the real intent of the parties. The Court of Civil Appeals held the evidence admissible.

[1] We think that the contract evidenced by the transfer of December 7, 1911, is not so free from uncertainty of meaning as to come within the rule prohibiting the admission of parol evidence to vary the terms of a written agreement. The transfer is to a one-half interest in the "business known as the Ft. Worth Pharmacy, including the stock of merchandise, furniture and fixtures, etc." The transfer of a business or an interest in a business, we think, carries with it the idea that the business is to be taken over with its assets and liabilities. This is what would ordinarily be understood from the words employed. But for the warranty clause there could, we think, be no doubt from the instrument itself that Richardson was to take the interest in the business with all its burdens. The warranty clause provides that the grantor "guarantees against all claims of any character against the said property or said business according to bill of sale conveyed to me by Lowe Brothers." Standing alone, the meaning of this clause is not clear. Richardson insists that the words "according to bill of sale conveyed to me by Lowe Brothers" were intended to identify the property conveyed, but the inclusion of these words in the guaranty clause, and not in the clause describing the property, seems inconsistent with this contention. It is more reasonable to assume that it was intended in some way to limit the guaranty. We think the instrument ambiguous, and that the prior agreements and transactions between the parties with reference to this transaction were admissible for the purpose of disclosing the real intention of the parties.

[2] We also think when, as in this case, a conveyance is made for the purpose of carrying out a prior executory agreement, that the two agreements, though not contemporaneous, are a part of the same transaction, and if there is any doubt as to the intention, as evidenced by the conveyance, that the prior agreement is admissible to aid in the construction of the conveyance.

In addition to what is stated above, we will say that the construction given by the trial court and the Court of Civil Appeals to the contract is but the construction given by the parties themselves. The evidence shows that at the time the bill of sale was made from Wilson to Lowe Bros., there was transferred and accepted by Richardson a one-half interest in the business, together with the accumulated profits which accrued while the business was being conducted by Schultz, and the evidence showed that the accounts and profits exceeded the amount of indebtedness incurred by Schultz during his administration. This shows that both parties understood that Richardson's interest in the business was to date from November 18, 1911.

Richardson in his answer alleged that he at the request and direction of Wilson had paid to Hutton and Lowe the sum of $315 in satisfaction of a debt due them by Wilson. This amount was pleaded as an offset. There was evidence, which, if believed, amply supported this plea as to at least the amount of $300. Richardson requested the court to submit to the jury the following special issue:

"What amounts were paid by the defendant Richardson to Hutton and Lowe for or on account of the plaintiff?"

This issue the court refused to submit. The only issue touching this matter submitted was the following special issue:

"What amounts are due or unpaid by defendant Richardson on the Hutton and Lowe account?"

To which the jury answered, $103.11.

[3] The trial court in the judgment rendered allowed Richardson a credit for this $103.11, and also allowed $200 as commission paid Senter for services in connection with

the purchase of the business from Lowe Bros. Wilson himself testified that he had agreed to pay Senter $200 for his services in that matter. The Court of Civil Appeals seems to hold that this $200 and the $103.11 allowed covered the amount due Hutton and Lowe. But there was evidence that Wilson was to pay Hutton and Lowe about $300, and that Richardson, at Wilson's request, had made this payment, and that this payment to Hutton and Lowe had no connection with the $200 which Wilson admitted he had agreed to pay to Senter and which appears to have been paid to Senter by Richardson at Wilson's request. We do not understand the verdict of the jury to find that Richardson had paid to Hutton and Lowe the sum of $103.11. On the contrary, it is a plain finding that Richardson had not paid $103.11 of the amount due Hutton and Lowe. There was no finding of the jury as to the amount which had been paid by Richardson on account of Wilson to Hutton and Lowe. It is clear to us that the special requested issue should have been submitted to the jury.

[4] Richardson also pleaded as an offset that Wilson had agreed to pay Senter a commission of $100 for his services in effecting the second trade between Richardson and Wilson, and that he (Richardson) had paid said sum to Senter at the direction of Wilson. The jury found that Richardson had paid to Senter the sum of $100, and there was evidence tending to show that it was paid at Wilson's direction. The trial court, notwithstanding the findings of the jury, refused to allow an offset of this $100 for the reason that the jury found that Senter was guilty of fraud in falsely representing to Wilson the value of the stock of groceries at Lillian, and that Senter as Wilson's agent having been guilty of this fraud was not entitled to recover the commission. In view of another trial, we will say that if Wilson requested Richardson to pay this $100 to Senter, and at the time of making the request knew of the alleged fraud of Senter, Richardson is entitled to the offset. If, however, it should appear that Wilson did not authorize the payment to Senter, or that he did so in ignorance of the fraud, and that Richardson at the time of the payment to Senter knew of the fraud perpetrated by Senter, in either event Richardson would not be entitled to the credit. If the payment was made by Richardson at Wilson's request, and Richardson at the time of the payment had no knowledge of any fraud on the part of Senter, the credit should be allowed.

The trial court gave the jury the following charge:

"Now in reference to the grocery store at Lillian, you are instructed that if you believe from the evidence that Senter represented and stated to the plaintiff, before and at the time of said sale or exchange, that one-half of the stock of groceries at Lillian was a good first-class stock of family groceries, and that said one-half interest was of the value of $1,600, and that same could be cashed for $1,500, and you believe from the evidence that Wilson relied upon the faith of such representations, and such representations were false and material, then Wilson would be entitled to recover such an amount of money as the difference in the reasonable cash market value of one-half interest of said stock of groceries at the time of the sale at the place where said groceries were situated in their then condition and the cash market value of such stock of groceries if they had been as represented by Senter to Wilson. If, however, Wilson sought information from Smith, who was then in charge of said groceries, and Wilson relied upon the representations made by Smith and did not rely upon the representations made by Senter, then, in the latter event, Wilson could not recover, and in answering this issue you will answer the following questions: On whose representations did the plaintiff Wilson rely in taking said one-half interest in said stock of groceries in exchange for the fixtures in the Ft. Worth Pharmacy?"

To which the jury answered: "On Senter's representations."

The court also submitted to the jury a question requiring them to find the amount of damages by reason of the false representations, to which the jury answered: "$900.00."

The defendant Richardson objected to said charge because the same "makes the defendants both liable for alleged representations made by Senter, irrespective of whether or not the said Senter was authorized or empowered to make said representations for the defendant Richardson, and irrespective of whether or not said Senter in making said representations was authorized to bind the defendant Richardson."

In connection with said objections, the defendant Richardson requested a special charge, to the effect that, if in making the representations Senter was not acting for Richardson, the verdict should be for the defendant Richardson, which charge was refused.

The plaintiff's petition is broad enough to authorize a recovery, either upon the ground that Richardson and Senter were acting as partners at the time of the last contract between Wilson and Richardson, and that Senter in making the representations was acting for the partnership; or upon the ground that in making the representations with reference to the stock of groceries Senter was acting as the agent of Richardson. The evidence and the findings of the jury preclude any recovery upon the theory of a partnership between Richardson and Senter. The recovery must therefore be supported, if at all, upon the theory that Senter was Richardson's agent in negotiating the trade

between Wilson and Richardson. The testimony of Wilson himself shows that Senter was employed by him to find a purchaser for the one-half interest in the drug business, and that he agreed to pay him a commission. There are circumstances, however, in evidence which tend to show that Senter in negotiating the trade was in fact acting for Richardson and as Richardson's agent. The testimony of Richardson and Senter is to the effect that in negotiating the transaction Senter was acting for Wilson only, but that after an agreement had been reached Senter was authorized by Richardson to sign his name to the contract because of the liability of Richardson to be present at the place where the contract was executed. Without repeating the testimony, we think. that under the evidence it was a question of fact for the jury to determine whether in making the representations Senter was acting as the agent of Richardson or not. It may be that Senter in making the representations was acting in his own interest, as under the contract between him and Wilson he was not entitled to a commission unless a trade was consummated. If Senter was not Richardson's agent at the time the representations were made and had no authority from Richardson to represent him at the time of negotiating the transaction, then Richardson would not be liable for the fraudulent representations made by Senter. If, however, with Richardson's knowledge and consent Senter was acting for him in negotiating the transaction, then Richardson would be liable for the representations made by Senter.

[5] It follows from what we have said that we think the charge making Richardson absolutely liable for Senter's fraud was erroneous, and that the issue of the authority of Senter to act for Richardson in the transaction should have been submitted to the jury. Senter, of course, would be liable for his own fraud, whether he acted for Richardson or himself, and in order to secure a commission; but in this case no judgment was rendered against Senter, and Wilson did not appeal. Upon another trial, the issue of Senter's agency for Richardson at the time the representations were made should be submitted to the jury. All other matters were, we think, correctly decided by the Court of Civil Appeals.

We recommend that the judgment of the trial court and the Court of Civil Appeals be reversed, and the cause remanded for a new trial.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court. We approve the holding of the Commission on the questions discussed.