JAMES A. DICK CO. v. YANEZ et al.

No. 2722.

Court of Civil Appeals of Texas. El Paso.

Oct. 27, 1932.

Appellant's Motion for Rehearing Granted Dec. 1, 1932.

Appellees' Motion for Rehearing Denied Dec. 22, 1932.

J. F. Hulse and Turney, Burges, Culwell & Pollard, all of El Paso, for appellant.

H. D. Stringer, R. A. D. Morton, S. J. Isaacks, and Isaacks & Lattner, all of El Paso, for appellees.

PELPHREY, C. J.

On or about the 30th day of June, 1930, a truck belonging to the Five Points Transfer Company and being operated by Guadalupe Moreno, was going east on Myrtle avenue in the city of El Paso, Texas, and a truck belonging to appellant, being operated by Jesus Peres, was going in a southerly direction on Virginia street. Appellee Yanez, an employee of Stone & Webster, was riding on the rear portion of the Five Points Transfer Company truck.

Upon reaching the intersection of the above streets, the truck of the transfer company was turned suddenly to the right, turned over, and Yanez was injured.

Yanez filed suit against both appellant and the transfer company, alleging negligence on the part of appellant's driver in failing to yield the right of way at a street intersection, failing to give a proper signal at the time of entering a street intersection, operating the truck at an excessive and dangerous rate of speed, in excess of twenty miles per hour, and in suddenly driving out into the intersection, after having slowed down the speed of the truck as it approached the intersection as though it was going to stop, and negligence on the part of the driver of the transfer company's truck in driving at an excessive and dangerous rate of speed and in failing to keep a proper lookout for other vehicles.

Appellant, in its answer, charged the driver of the transfer company's truck with driving at an excessive rate of speed, failing to keep a lookout, with being negligent in attempting to turn south on Virginia street while traveling at a high and dangerous rate of speed, in not having the truck under control, in not slowing down to a reasonable speed in approaching the intersection, and in failing to sound a warning signal.

Appellant also alleged contributory negligence on the part of Yanez in failing to warn the driver of the transfer company's truck to drive slowly, and to keep a lookout for other vehicles at the intersection, in not requesting the driver to permit him to alight when he saw, or should have seen, that he was exceeding the speed limit, and in not keeping a lookout for other vehicles, and in failing to warn the driver of the approach of appellant's truck.

In response to special issues, the jury found that the transfer company's truck was being operated at a speed in excess of twenty miles per hour; that such negligence was a proximate cause of the injuries suffered by Yanez; that the driver of appellant's truck failed to yield the right of way and failed to keep a proper lookout; that such negligence was a proximate cause of the injuries to Yanez; and that the negligence of appellant's driver to yield the right of way and keep a lookout were sole proximate causes of such injuries.

Upon such finding being returned into court, the trial judge refused to receive the verdict, and pointed out to the jury the conflict between its finding. Thereupon the jury retired, and later returned a verdict with a finding that the speed of the transfer com-

pany's truck was not a proximate cause of the injuries.

The trial court then rendered judgment against appellant for $2,500, the amount of damages fixed by the jury.

The court defined "negligence" in its charge as follows:

" 'Negligence' is the doing of that which a person of ordinary prudence would not do, or in failing to do that which a person of ordinary prudence would do under the same or similar circumstances.

" 'Negligence' is likewise the breach of a duty enjoined by the statute law of the State. The Statutes of the State provide that one shall not drive a motor vehicle in the public streets of the city in excess of twenty miles per hour. The statutes further provide that the operator of a vehicle approaching an intersection on a public highway shall yield the right of way to a vehicle approaching such intersection from the right of such first named vehicle."

Appellant objected to the latter portion of the charge on the ground that it was a general charge and therefore not a proper charge to be given in a case submitted on special issues.

While it may be that the giving of the charge was unnecessary, yet we cannot agree that it is a general charge. It is at most a definition of statutory negligence which would not necessarily be included in the first part of the definition.

Appellant's argument that it is an instruction on the law of the case and that it tended to inform the jury of the effect of its answers calls for no discussion. No such objections were made in the trial court.

When the jury had returned its first verdict into court, the trial judge gave to the jury the following instruction: "Gentlemen of the Jury:

"The court cannot receive your verdict on account of a conflict of findings.

"In answer to question No. 4 you have found that negligence of the defendant transfer company was a proximate cause of the injuries to plaintiff; in answer to questions 1a and 2a, given at request of defendant transfer company you have found in 1a that the failure of the driver of the grocery company truck to yield the right of way was the sole proximate cause of the injury to plaintiff, and in 2a that the failure of the defendant's grocery company driver to keep a lookout was the sole proximate cause of the injury. The findings conflict. An event may have one or more proximate causes, but if an act or omission is the sole proximate cause of an event, it excludes all others."

Appellant's bill of exception, after setting out the returning of the first verdict, the court's refusal to accept it, the instruction above quoted, and the fact that the jury retired and changed its answers to issues 4 and 1a, recites: "To which action of the court in refusing to accept the verdict originally tendered the court by the jury, and in giving the jury the further instructions as above set out, and in instructing the jury to retire and further consider its verdict after it had already rendered its verdict by finding its answers to the issues submitted to it, and signing the verdict by and through its foreman, and to the act of the court in receiving the verdict as changed by the jury after its second consideration and deliberation of the issues submitted to it, the defendant, James A. Dick Company, in open court excepted, and moved the court to set aside the verdict received and accepted by the court, and to accept as the verdict of the jury the verdict with the answers therein contained as first and originally answered by the jury, which motion the court overruled."

Appellant in its brief argues that the instructions should not have been given because they pointed out the answers which conflicted with each other and constituted a general charge. It will be seen from the above-quoted bill of exception that no such objections were made in the trial court, and therefore cannot now be raised. Appellant also contends that it was error for the court to give the additional instructions after the jury had retired and made findings on the issues submitted, and argues that under article 2187 the court was prohibited from giving any instructions except before the argument was begun.

It is not disputed that there existed a conflict between certain answers of the jury in its first verdict. Under such a state of facts, we think it clearly was the duty of the court to refuse to accept the verdict and send the jury back for further deliberations. Turner v. Missouri, K. & T. Railway Co. (Tex. Civ. App.) 177 S. W. 204 (writ refused); Wichita Valley Railway Co. v. Southern Casualty Co. (Tex. Com. App.) 284 S. W. 940; St. Louis, S. F. & T. Railway Co. v. Kaylor (Tex. Com. App.) 291 S. W. 216—the holdings of the Commission in the last two cases being approved by the Supreme Court. In the first case it was also held that the court's calling the attention of the jury to the conflicts was not error.

Therefore we think it proper for the court to refuse to accept a conflicting verdict and to inform the jury as to where the conflict exists. Certainly the court should not in so doing suggest to the jury how the changes should be made so as to remove the conflict. Such was not done in this case, and no such objection was made to the instruction given.

We also find that under article 2198, our courts have held that the court was authorized to give the jury further instruction with-

out any request from it therefor. Cockrell v. Egger (Tex. Civ. App.) 99 S. W. 568; Cheek v. Nicholson & Co. (Tex. Civ. App.) 146 S. W. 594 (writ refused); Gotoskey v. Grawunder (Tex. Civ. App.) 158 S. W. 249; Mulligan v. McConnell Bros. (Tex. Civ. App.) 242 S. W. 512; Richardson v. Wilson (Tex. Civ. App.) 178 S. W. 566.

The cases cited by appellant are not in point. Hickman v. Talley (Tex. Civ. App.) 8 S.W.(2d) 267, was where the court, upon the jury being unable to agree; submitted other and different issues. In International & G. N. Railway Co. v. Parke (Tex. Civ. App.) 169 S. W. 397, the charge of the court was not read to the jury before the argument, and in Needham v. Cooney (Tex. Civ. App.) 173 S. W. 979, the court was dealing with the question of reserving exceptions to a peremptory charge.

We have concluded that the assignments on this point present no error and must be overruled.

■ Appellant, in its seventh assignment of error, complains of the trial court's action in rendering judgment against it, in the absence of a finding by the jury that the driver of the truck was an employee or agent of appellant at the time of the accident.

An examination of the evidence introduced shows that Jesus Peres was an employee of appellant on the date in question, that he was driving the truck of appellant at the time of the occurrence out of which the suit arose, and that he was bringing a load of peaches from the depot to appellant's place. The facts were shown by Jesus Peres himself and also by Juan Ortiz, a witness introduced by appellant. The facts were undisputed.

The question we are called upon to decide is, Was it necessary, under such a state of facts, for an issue as to whether at the time in question, Peres was an employee or agent of appellant, and was the court authorized, in the absence of a finding of the jury that he was such agent or employee, in rendering judgment against appellant? Article 2185, Revised Statutes, in dealing with charges generally, provides that the court "shall only submit controverted questions of fact," and in article 2189 it is further provided that upon submitting a case on special issues the court. "shall submit the cause upon special issues raised by the pleadings and the evidence in the case."

In Lamar v. Panhandle & S. F. Railway Co., 248 S. W. 34, 37, the Commission of Appeals, Section B, held that the submission of issues as to whether there was a wreck and whether plaintiff was a passenger at the time in question constituted reversible error. The court in its discussion had the following to say: "The trial court did submit said two issues to the jury. Under the pleadings and evidence in this case, we think it was error to do so, for these facts were admitted by all. The

latter part of article 1971 [now 2185] of our statutes, heretofore quoted by us, provides that the trial court 'shall submit all controverted questions of fact only to the decision of the jury.' The reason for this statute is obvious. Every possible effort should be made by the trial courts to simplify their charges to juries and render less likely any confusion on their part. Admitted facts should not be submitted and thereby possibly confused with other issues." This holding was approved by the Supreme Court.

Again in Speers Special Issues we find: "Neither can the court be put in error for a refusal to submit on issues, however material the same may be, if the evidence with respect thereto be legally undisputed. It forms no basis for a finding. Only one finding can be made and where this is the case, the matter is for the court and not the jury. Such undisputed matter should never be submitted. It presents no issue." Citing numerous authorities.

If undisputed facts should not be submitted, then it follows that a judgment rendered in the absence of a finding upon such undisputed facts should be upheld.

The cases cited by appellant are in conflict with the many authorities cited by the author, above quoted, and cannot be followed in a case such as we have before us, where appellant's own witness testified to the existence of the fact which it complains was not found by the jury, and there is nothing in the record even tending to show that such fact did not exist.

■ Appellant also assigns error to the court's refusal to grant its motion for a new trial because of misconduct on the part of the jury in discussing the question of plaintiff's attorney's fees during its deliberations.

Six of the jurors were examined on hearing on the motion for a new trial; two of whom, Campbell and Haywood, testified that the matter of attorney's fees was mentioned before a decision was reached upon the amount the jury would allow plaintiff, while the other four testified that, according to their best recollection, it was not mentioned until after all the issues had been answered. All of the jurors testified that they had not considered attorney's fees in deciding upon the amount to be awarded plaintiff, with the exception of Campbell, who said he had considered it.

It appears from the testimony of jurors Cobble, Parmalee, and Richmond that the jury, in deliberating on the amount to be allowed him, figured to allow him for the time lost between the date of injury and the date of trial, for loss of time thereafter, and his hospital and doctor's bills. These items were based upon $2.25 per day for time lost before trial and $1 per day for loss of time thereafter, and the sum of $450 to $500 for doctor's

bills. It appears that about sixteen months had elapsed between the date of injury and the date of trial, but the testimony varies as to the number of months the jurors used as a basis for their allowance on that item, some saying twelve and others fourteen, but all agree that such an allowance was made. They all seem to agree that $400 to $500 was agreed on as the amount to be allowed for doctor's bills and that $1 per day was agreed upon as a basis for the allowance of future loss of time.

Campbell testified that, while the jury used the above figures as a basis for fixing their allowance on the items, also testified that they allowed $700 for loss of time before trial, $500 for subsequent loss of time, and $450 for doctor's bills, making a total of about $1,600; that, after his attorney's fees and hospital bills had been paid, plaintiff would have about $1,200 net.

If Campbell's version be taken as true, then attorney's fees were considered in fixing the amount allowed plaintiff, while, if the testimony of the other jurors is accepted as to the method used in computing the amount to be allowed him, no sum for attorney's fees was included in the amount allowed.

In this state of the testimony there existed conflicts in the evidence both as to whether the jury had discussed the question of attorney's fees before the issues had been answered and whether in computing the amount to be allowed any sum for attorney's fees had been included.

We think it is now well established that in passing upon the evidence on the hearing of a motion for a new trial the trial court is the judge of the credibility of witnesses and of the weight to be given to their testimony. Bradley v. Texas & P. Railway Co. (Tex. Com. App.) 1 S.W.(2d) 861, 862; Texas Employers' Ins. Ass'n v. Chocolate Shop (Tex. Com. App.) 44 S.W.(2d) 989; Houston & T. C. Railway Co. v. Gray, 105 Tex. 42, 143 S. W. 606.

Another rule equally well established is that the granting or denying of a new trial for misconduct on the part of the jury is, to a great extent, within the discretion of the trial court, and that the ruling of the trial court will not be interfered with by the reviewing court except in very strong cases of misconduct. 3 Tex. Jur. § 761, and authorities cited.

Under the facts as here revealed by the testimony of the jurors and with the above rules in mind, we think the words used by the Supreme Court in Houston & T. C. Railway Co. v. Gray, supra, meet the situation with which we are confronted. The court said: "If the evidence taken by the trial judge left it reasonably doubtful as to the effect the statement had upon the amount of the verdict of the jury, we would feel inclined to exercise our authority and set it aside; but the judge who tried the case seems to have acted promptly and fairly in the investigation and we know that he could form safer conclusions from examining the jurors than this court can from the record. There is much in looking at the man who testifies."

The assignment must be overruled. The remaining question presented by appellant is as to the action of the trial court in refusing it permission to file a trial amended answer.

That amendment in substance alleged negligence on the part of plaintiff in riding in the rear of the transfer company's truck, seated upon boxes or barrels which would shift their position if the truck was not handled in a careful manner, and in that he was riding in the rear of the truck, which was not made for conveying passengers and from which place he could not easily and readily request the driver to drive carefully or let him off, if the driver operated the truck at a dangerous rate of speed or in a dangerous manner. It also contained an allegation that the transfer company's driver was negligent, he having seen appellant's truck proceeding southerly on Virginia street, crossing Myrtle, some considerable time before he reached the intersection, in failing to stop his truck and thereby avoid the accident.

In its bill of exceptions, appellant contended that it had no knowledge of the facts forming the basis of the answer before the trial and that a knowledge of the facts had come to its attorneys for the first time from testimony of plaintiff and the driver of the transfer company's truck.

In plaintiff's original petition, filed February 13, 1931, nine months before the amended answer was tendered, we find an allegation by plaintiff that he was seated in the rear portion of the truck, and in the transfer company's amended answer, filed on the day before the amended answer of appellant was filed, we find the same allegation.

It therefore follows that appellant must have known that plaintiff was riding in the rear portion of the truck long before plaintiff testified in the trial.

It also appears that appellant had notice of the fact that the driver of the transfer company's truck had seen appellant's truck before he reached the intersection, for we find in the answer of the transfer company filed on November 13, 1931, the following: "And when said truck was approaching the intersection of Myrtle and Virginia streets, the driver of this defendant's truck noted the truck of the defendant James A. Dick Company approaching Myrtle Avenue from the North, and was preparing to stop or slow down until said truck had crossed Myrtle Avenue."

It was further before the court that the injury complained of happened in June, 1930, that the suit was filed in February, 1931, and that the trial was not had until November 14, 1931.

Under the above facts, would we be justified in holding that the trial court had abused the sound discretion with which appellant admits the trial court is clothed in the matter of filing trial amendments? We think not. In the first place, as said before, the record shows that the matters upon which it bases its trial amendment were pleaded before the trial began, and, in the second place, appellant had ample legal means of ascertaining what the testimony of the witnesses would be, during the long lapse of time between the filing of the suit and the trial.

We have carefully studied the record, and finding no errors calling for a reversal of the judgment, it is affirmed.

WALTHALL, J., did not sit in this case.

On Appellant's Motion for Rehearing.

PELPHREY, C. J.

In our former opinion we held that that part of the court's charge which advised the jury that a breach of a statutory duty was negligence and informed the jury as to the provisions of the statutes as to speed and yielding the right of way was not subject to the objection interposed by appellant that it was a general charge.

After further consideration of the holdings of our courts, we have concluded that we were in error in so holding.

The holding of the Commission of Appeals in J. M. Radford Grocery Company v. Andrews, 15 S.W.(2d) 218, and that of the Fort Worth Court of Civil Appeals in Gause-Ware Funeral Home v. McGinley, 41 S.W.(2d) 433 (writ refused), clearly appear to be contrary to our previous holding.

The motion for rehearing is accordingly granted, and the judgment of the trial court reversed, and the cause remanded.

WALTHALL, J., not sitting.

On Appellees' Motion for Rehearing.

PELPHREY, C. J.

Appellees have presented a strong motion in which they complain of our action in sustaining appellant's motion for rehearing and holding that the definition of negligence constituted a general charge and was therefore erroneous.

One point urged is that the jury in determining the question of unavoidable accident could not, under the facts here, have properly passed upon that issue in the absence of an instruction from the court that the breach of a statutory duty was also negligence. There is much merit in that contention, and we can readily see the logic of it, but it must be remembered that the charge given in reference to statutory negligence was not limited to the issue of unavoidable accident, but was to be considered by the jury in connection with all the issues submitted.

We cannot agree with appellees that the J. M. Radford Grocery v. Andrews and the Gause-Ware Funeral Home v. McGinley, supra, are not controlling, and in deference to those opinions the motion must be overruled.

WALTHALL, J., participated in the consideration of this motion.

HIGGINS, J. (dissenting).

It is with reluctance and some hesitation that I dissent from the ruling of the majority upon appellees' motion for rehearing, for I recognize that the cases upon which the majority base their ruling seem to support the same. But I regard the ruling as erroneous and as presenting to trial courts a great difficulty in submitting, upon special issues, cases of the present nature. For this reason I am impelled to dissent.

The preliminary portion of the court's charge was devoted to definitions and explanations.

In the order named, the court defined preponderance of the evidence, ordinary care, negligence arising out of the failure to exercise ordinary care, and statutory negligence, as copied in the main charge, proximate cause, independent intervening cause, and unavoidable accident.

Unavoidable accident was defined as follows: "By 'unavoidable accident' is meant, such an unexpected catastrophe as occurs without the plaintiff or defendant being to blame for it, that is, without either one being guilty of negligence in doing, or permitting to be done, or omitting to do the particular thing that was a proximate cause of such casualty."

The court then submitted the various issues inquiring, first, whether the incident complained of between the plaintiff and the defendant transfer company was an unavoidable accident, and, second, whether such incident as between the plaintiff and the defendant grocery company was an unavoidable accident. Both of these questions were answered in the negative.

In cases submitted upon special issues it is the duty of the court, imposed by statute (article 2189) to "submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues."

We have here a case presenting issues of

negligence arising out of a failure to exercise ordinary care, statutory negligence, and unavoidable accident. In order for the jury to pass upon the issue of unavoidable accident, it was necessary to define both kinds of negligence, and, in the case of statutory negligence, it was necessary to do more than merely define the term. It was necessary, by way of explanation, to also inform the jury as to the statutory provisions relative to driving in excess of twenty miles per hour and yielding the right of way at intersections.

That is all the court did in the definition and explanation of statutory negligence, and in my opinion it should not be regarded as subject to the objection of being a general charge.

The definition and explanation given of statutory negligence was, in my opinion, absolutely necessary to enable the jury to properly pass upon and render its finding upon the issue of unavoidable accident.

The majority opinion recognizes this, but intimates the definition and explanation should have been expressly limited to the issue of unavoidable accident. If it had been so done, that would not have relieved the same of being a general charge if it be justly subject to the criticism that it was such a charge. It would have still been a general charge.

The majority also say it was to be considered by the jury in connection with all of the other issues in the case. The same criticism can be made of every definition and explanation given in the charge.

The court prefaced that portion of the charge relating to definitions and explanations with this statement: "In connection with the issues submitted certain legal terms will be used, hence, for your guidance the Court will define same."

The definition and explanation in question was pertinent only to the issue of unavoidable accident, for, in submitting the issues of proximate cause in connection with the issues of speed in excess of twenty miles per hour and failing to yield the right of way, the court assumed negligence as a matter of law, if affirmative answers were returned upon such issues of speed and failing to yield the right of way.

It is not to be assumed the jury gave to the definition and explanation of statutory negligence any pertinency other than that which properly attached to it, namely, in connection with the issue of accident. If the jury did give it an improper application, that would not render it a general charge.

In brief, the writer is of the opinion that the definition and explanation in question was a proper and necessary one and not subject to the criticism that it was a general charge.