**JOHNSON v. TUNSTALL.**
No. 1130—5406.

Commission of Appeals of Texas, Section B.
March 26, 1930.

RYAN, J.

Plaintiff in error brought this suit in the district court of Dallas county against defendant in error and Grayson King and wife, Gertrude L. King, alleging that on August 24, 1925, defendant in error, a feme sole, being the owner of certain property in the town of Oak Cliff, entered into a written contract with J. W. Alexander for the erection of certain improvements thereon, and agreed to pay therefor the sum of $32,000, evidenced by her promissory note due on or before November 24, 1925, to secure which she created an express lien upon said property and improvements; that Alexander transferred said note and lien to the Oak Cliff Bank & Trust Company. Desiring to refinance the indebtedness and arrange a different method of paying the same, she negotiated a loan with the Oak Cliff Building & Loan Association for $30,000, whereupon the Oak Cliff Bank & Trust Company conveyed to the Oak Cliff Building & Loan Association a preferred interest of $30,000 of its claim, said sum to be paid to the bank and trust company and to plaintiff in error, in full of Alexander's indebtedness to said bank and to plaintiff in error for the cost of certain lumber and material furnished to Alexander and used by him in the erection of said improvements. The bank afterwards, on March 13, 1926, transferred to Alexander the $2,000 balance of said note and the lien securing the same, which, on the same day, was transferred by Alexander to plaintiff in error.

The petition of plaintiff in error further averred that the Oak Cliff Building & Loan Association, out of the $30,000 borrowed of it by Mrs. Tunstall, as above stated, paid, at her special request, to the Continental Savings & Building Association, the sum of $2,340.94 owing by her to it as a prior and first lien on the property, by reason of which Mrs. Tunstall lacked $2,340.94 of paying her indebtedness to Alexander under and by virtue of the note and contract for $32,000, and therefore he became subrogated to the claim and lien of the Continental Savings & Building Association, and she became indebted to him to that extent.

Said petition further alleged that Mrs. Tunstall, being unable to negotiate a loan for sufficient money to pay the Continental Savings & Building Association and plaintiff in error, agreed with him that, if he would permit the Oak Cliff Building & Loan Association to pay, out of her $30,000 loan from it, the Continental Savings & Building Association's first lien and the balance owing to the Oak Cliff Bank & Trust Company, and other amounts owing by reason of the construction of said improvements, she would execute a note for the balance due plaintiff and secure same by deed of trust as a second lien, subordinate to that of the Oak Cliff Building &

Thomas, Storey & Grady, R. G. Storey, and George Burgess, all of Dallas, for plaintiff in error.

Cockrell, McBride, O'Donnell & Hamilton, Otis Bowyer, Jr., and C. C. Renfro, all of Dallas, for defendant in error.

Loan Association, which agreement he in all things carried out.

Said petition further alleged that, in accordance with said agreement, Mrs. Tunstall, on or about January 12, 1926, executed and delivered to the Oak Cliff Building & Loan Association her note for $30,000, in which she was joined by the defendants King and wife, to secure which she executed her certain deed of trust to W. H. Flippin, trustee. It was further averred that she and plaintiff, Johnson, agreed that the amount owing him was $3,372.37, for which a note for $2,983.82, dated January 12, 1926, payable thirty days after date to Johnson's order, and a deed of trust securing same, to W. H. Flippin, trustee, were prepared—the difference and balance to be paid in cash.

Said petition further alleges that the defendants then instructed the Oak Cliff Building & Loan Association to pay the Continental Savings & Building Association the above amount and to pay out all of said $30,000, which instructions were carried out, but the defendants then refused to execute the note and deed of trust to plaintiff; that they are therefore estopped from denying the indebtedness to plaintiff in said sum of $3,372.37, and that same constitutes a valid lien upon said property.

Said petition, then, in the alternative, avers the sale and delivery to Alexander, the contractor, of material, in the sum of $6,372.37, used in the erection and building of said improvements, and the fixing by him of the statutory materialmen's lien against the property—the last item furnished on December 14, 1925, showing a balance due of $3,372.37. The petition then avers that Mrs. Tunstall is indebted to Alexander, under the contract, and still owes him the sum of $2,340.94, which is the amount taken from the moneys due Alexander and used to pay the prior lien due by her.

The petition further averred that, for the $6,372.37 worth of material so purchased by Alexander from plaintiff, Mrs. Tunstall paid plaintiff the sum of $3,000, and Alexander transferred to him $2,000 of the $32,000 note above set out, leaving a net balance due plaintiff *on open account* of $1,372.37.

Plaintiff prayed judgment against Mrs. Tunstall for his debt, principal, and interest, and foreclosure of his liens against all the defendants.

The defendants excepted generally and specially to the petition, and pleaded general denial, and specially that the $32,000 note and mechanic's lien were secured by fraud and deceit on the part of said Alexander, in that he agreed to complete his contract for the agreed consideration of $24,000, but that the larger amount was necessary to be stated, in order that bankers and loan companies would advance sufficient money to pay for and discharge the obligations for services, labor, and material, and that all amounts of said note above $24,000 were fraudulently secured without consideration, and no lien exists for payment of same.

Defendants' answer further averred that all liens and debts in connection with the $32,000 note and mechanic's lien have long since been paid and discharged except $30,000 to the Oak Cliff Building & Loan Association, now taken up and merged into a lien to the John Hancock Mutual Life Insurance Company and Geo. A. Titterington.

When the defendants filed the above answer they at the same time filed an instrument denominated "defendants' motion and plea in abatement," "to require plaintiff to elect which cause of action he stood upon, whether an express lien, a lien fixed by affidavit, an open account and a constitutional lien and for failure to do so to dismiss the plaintiff's cause of action."

The case was submitted to a jury on special issues, which with their answers, are as follows, viz:

"Special Issue No. 1. .

"Did Alexander for himself or acting for defendant Tunstall purchase the material from defendant Johnson?

"Answer: Acting For Defendant Tunstall.

"Special Issue No. 2.

"Did defendant Tunstall agree to pay defendant Johnson $388.55 in cash and execute a note for $2,963.00 secured by a second lien on the property in controversy if Johnson would allow the loan with the Oak Cliff Building & Loan Association to be closed and the money disbursed? Answer yes or no. Answer. Yes.

"Special Issue No. 3.

"Did Johnson rely on such agreement, if any? Answer yes or no. Answer. Yes.

"Special Issue No. 4.

"Did the Oak Cliff Building & Loan Association pay out the proceeds of said loan after the making of such agreement, if any? Answer yes or no. Answer: Yes."

The trial court, having overruled defendants' general and special exceptions, rendered judgment in accordance with the jury's findings, for plaintiff, Johnson, against defendant Mrs. Tunstall in the sum of $3,372.37, principal, and legal interest to date of judgment amounting to $342.85, a total of $3,715.22, with interest on such aggregate amount, together with foreclosure of liens on the property as against all parties defendant.

On appeal that judgment was reversed and the cause remanded by the Court of Civil Appeals. 13 S.W.(2d) 240.

The Court of Civil Appeals found that the proceeds of the $30,000 note to the build-

ing and loan association were disbursed in part to the bank and trust company in settlement of advances it had made and in part to satisfy prior liens, which was done with the acquiescence of the parties at interest, and but for the diversion of the amount paid out in satisfaction of such prior liens there would have been sufficient funds with which to pay Johnson, whereas, on account of that diversion, his claim remains unpaid to the amount of $3,372.37, and correctly concluded as a matter of law, based upon the jury's findings, that, as Johnson agreed to the diversion of funds, which otherwise would have been applied to the satisfaction of his claim and lien, in reliance upon Mrs. Tunstall's agreement, in which she defaulted, to secure that claim by a new lien, she is estopped to claim that diversion as a defense to the original claim and lien, which may be enforced according to the rights and liabilities of the parties as they existed at the time of the diversion. Floyd v. Hammond (Tex. Com. App.) 268 S. W. 146; Evans v. G., C. & S. F. Ry., 9 Tex. Civ. App. 124, 28 S. W. 903; Schwarz v. National Bank, 67 Tex. 217, 2 S. W. 865.

The judgment of the trial court should therefore have been affirmed.

But the Court of Civil Appeals reversed the judgment below, one of the grounds therefor being that a written agreement between Johnson and Alexander, joined in by the Oak Cliff Building and Loan Association, purporting to set out the terms of the diversion agreement, and not signed by Mrs. Tunstall, was erroneously admitted in evidence. This agreement recites that Mrs. Tunstall having theretofore executed a mechanic's lien to Alexander for $32,000, which has been transferred to the Oak Cliff State Bank, subject to a credit of $2,000, she has made application to the building and loan association for a loan of $30,000 to take up an outstanding loan of $2,300 and pay off a certain lien of $3,500, it is understood that she sign all papers in favor of the building and loan association for $30,000, and that concern is to pay off the $2,300, merge the $3,500 claim into the transaction and pay all outstanding bills so far as said money will cover, after the company has filed its deed of trust making theirs a first and only lien on the property.

It was also understood that Alexander and Johnson then agreed to take a second lien for thirty days for their claim to finally settle and pay off all liens, not to exceed $2,650. Touching this agreement, Mrs. Tunstall herself testified: "Cavin Muse wrote this instrument. The reason that agreement was entered into, Alexander claimed that I owed him more money than I did and I claimed that I did not owe it and I agreed on this deal. He showed me how much I owed him and I said if I owed him some, if I had not paid him $24,000.00, I would pay it. We all agreed

to it and they signed it so that I would sign the papers. I was to have a release of the $2,000.00 balance. I was the one that had that written for them to sign."

It was shown in evidence that Mr. Cavin Muse was her attorney. The testimony of all of the witnesses, including that of defendant in error, is that the agreement was prepared by Mrs. Tunstall and her attorney. By its terms, defendant in error was to execute the mortgage to the loan company, and plaintiff in error agreed that the moneys due Alexander and to him should be applied to the prior lien indebtedness due by defendant in error, and plaintiff in error would take a note for the balance due him. This was a mutual agreement, and it was not necessary that Mrs. Tunstall sign the same if she had it prepared and the other parties acted thereon. She testified Johnson signed the agreement so she would sign the loan company papers, and that she signed the loan company papers because of that agreement.

The agreement proved no more than the facts proved by the witnesses. Had the agreement not been admitted in evidence, the testimony of the witnesses was sufficient to support the findings of the jury; the agreement does no more than to substantiate the testimony of the witnesses, and it appears from the testimony of defendant in error, herself, that she had the agreement prepared, and that she refused to sign the papers to the loan company until the agreement was signed by Johnson and Alexander; that upon their signing the agreement she signed the papers to the loan company.

█ However, this instrument was part of the entire agreement between the parties, and the other parties having acted on it, was admissible in evidence to show that Johnson had agreed to change his prior position and take a second lien for his debt, thus enabling Mrs. Tunstall to obtain the loan from the Building and Loan Association. Thomas v. Hammond, 47 Tex. 43; Harness v. Luttrall (Tex. Civ. App.) 225 S. W. 810; First State Bank v. Cohn (Tex. Civ. App.) 247 S. W. 923.

As said by Judge Montgomery of this section of the Commission of Appeals, in Richardson v. Wilson, 213 S. W. 613, 616: "When * * * a conveyance is made for the purpose of carrying out a prior executory agreement, that the two agreements, though not contemporaneous, are a part of the same transaction."

██ However, it is well established in this state that a contract reduced to writing, signed by one party and accepted by the other, is a written contract. Martin v. Roberts, 57 Tex. 564; Campbell v. McFadin, 71 Tex. 28, 9 S. W. 138; Clegg v. Brannan, 111 Tex. 367, 234 S. W. 1076. Therefore, the contract in question is also for that reason binding on Mrs. Tunstall.

The Court of Civil Appeals also held as error the admission in evidence of certain conversations between Alexander and Johnson, Mrs. Tunstall not being present. These conversations were to the effect that Mrs. Tunstall wished the material to be furnished by Johnson, and in our opinion relate to unimportant collateral matters, she herself having testified that she knew Alexander was buying from Johnson and she knew he "was going to buy from Johnson before he started."

Having reached the conclusion that the Court of Civil Appeals erred in reversing the judgment below, we recommend that said judgment be itself reversed, and that of the district court be affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.