Gerald JOHNSON et al., Appellants,

v.

TEXAS GULF COAST CORPORATION, Appellee.

No. 13905.

Court of Civil Appeals of Texas.

San Antonio.

July 18, 1962.

**92**

Hyde & Hamilton, J. W. Cooper, Jr., Corpus Christi, for appellants.

Guy H. Allison, Corpus Christi, for appellee.

BARROW, Justice.

This suit was instituted by Texas Gulf Coast Corporation against Gerald Johnson, Thomas Johnson (who is dead), Fayne Johnson, and Johnson Oil Supply Company, a partnership, seeking to establish plaintiff's right and title to one sixty-fourth of eight-eighths ($\frac{1}{64}$ of $\frac{8}{8}$ths) overriding interest under a certain leasehold estate in Jim Wells County, Texas, and asking for the execution by the defendants of such instrument as would be necessary to secure title to that interest in plaintiff, and for an accounting for the monies from the production under such interest.

The parties tried the case in the trial court on the agreed basis that the only question involved was:

(a) Whether or not one Lewis O. Kelsey, who was admittedly the agent of the defendants in negotiating the purchase of pipe from the plaintiff, had the authority to bind the defendants in an agreement executed by him for the defendants, whereby he agreed that the defendants would transfer to plaintiff a one-sixty-fourth of eight-eighths ($\frac{1}{64}$th of $\frac{8}{8}$ths) overriding royalty interest under a certain leasehold estate as an additional consideration over and above the out of stock price for the pipe, or,

(b) If he did not have the authority to do so, whether or not the defendants subsequently ratified such agreement.

Based upon the answers of the jury, the trial court rendered judgment in favor of plaintiff, and the defendants have prosecuted this appeal.

An overriding royalty in an oil and gas lease is an interest in land and ordinarily must be conveyed by an instrument in writing executed in the manner set forth in Art. 1288, Vernon's Tex.Civ.Stats. See also, Art. 3995, Vernon's Tex.Civ.Stats; Pantaze v. McDill, Tex.Civ.App., 228 S.W. 962; Summers, Oil & Gas, § 543.

However, the statute of frauds was not plead herein, and no question is raised to the effect that Lewis O. Kelsey had no written authority to convey the overriding royalty, or that it was not conveyed by an instrument in writing. Therefore, such questions will not here be considered.

The evidence shows that Lewis O. Kelsey was an agent of appellants here, who were defendants below. Appellants were in need of pipe in their drilling operations and Kelsey went to Victor VerMilyea, President of Texas Gulf Coast Corporation, in January, 1953, for the purpose of purchasing the needed pipe, which was in short supply and hard to obtain at that time.

A deal was there entered into between these two parties, purporting to act as agents of the appellants and appellee, respectively, whereby appellee agreed to furnish appellants the pipe desired. The pipe was to be paid for within ten days after delivery at the current out of stock prices, and in addition thereto appellants were to assign to appellee a $\frac{1}{64}$ of $\frac{8}{8}$ interest in an overriding royalty of a leasehold interest located in Jim Wells County, Texas, known as the C. W. Ragland Lease. In this connection, Lewis O. Kelsey, purporting to act for appellants, executed two letter agreements. One was a letter dated January 12, 1953, signed by Lewis O. Kelsey, accepted

by appellee, in which it was stated that an immediate assignment would be made of a ⅟₆₄ of ⅝ free overriding royalty interest to appellee in the Ragland Lease, and that Johnson Oil Supply Company would commence drilling a well at its own expense. The other provided that, pursuant to the first letter, the appellee agreed to furnish certain listed tubular goods at prices quoted F.O.B. appellee's Corpus Christi yard, and to be paid for ten days after delivery. The pipe was not paid for within the ten-day period, and about nine months thereafter appellants were required to sign a note payable to appellee in the sum of $10,836.57, and on the same day an assignment of an oil payment was executed by appellants. Later appellants executed a deed of trust covering this oil payment, and as appellee had not recorded its assignment, its interest was cut off. This oil payment is not to be confused with the free overriding royalty which is the subject of this suit.

VerMilyea testified that after the letter agreements were executed there were several meetings with Gerald Johnson, Kelsey and himself, at which the agreements were discussed. At that time Johnson did not deny Kelsey's authority to sign the agreements, but, on the contrary, he acknowledged the agreements. VerMilyea testified:

"Q   You stated that Mr. Johnson at one or more of those meetings agreed to give you a free overriding royalty interest, correct?

"A   Yes, we all agreed to it."

He further testified that after these conversations, he received a division order from appellants reflecting that appellee was the owner of a ⅟₆₄ of ⅝ interest in production on the lease in question. Further, that after execution of the division order, Johnson personally signed checks for production on the lease and furnished appellee with an income tax form which recited that the sums were paid as rents and royalties. VerMilyea also testified that Johnson had tried to buy appellee's overriding royalty interest.

In their reply to appellee's request for admissions of fact, appellants admitted that Kelsey was acting in their behalf in purchasing the pipe from appellee, and that he was authorized to execute an overriding royalty interest, but only as security for the indebtedness. Johnson denied having any knowledge of the letter agreements until after this suit was filed. He testified that he executed the division order to pay off the note and that since the note was now nearly paid off a new division order should be executed. In this connection, it is significant that the sale did not become a credit transaction and the note was not executed until nearly nine months after the sale and agreements were executed.

Thus we come to the all-important question as to whether Lewis O. Kelsey was authorized to assign to appellee the ⅟₆₄ of ⅝ free overriding royalty of the Ragland Lease.

The following three issues were submitted to the jury and answered in the manner indicated:

"SPECIAL ISSUE NO. 1:

"Do you find from a preponderance of the evidence, if any, that the said Lewis O. Kelsey in entering into the agreements of January 12, 1953, being Plaintiff's Exhibits Nos. 3 and 5, was acting with the express authority of one or any of the defendants herein?   We, the Jury, answer: He was.

"SPECIAL ISSUE NO. 2:

"Do you find from a preponderance of the evidence, if any, that the said Lewis O. Kelsey in entering into the agreements of January 12, 1953, being Plaintiff's Exhibits Nos. 3 and 5, was acting with the implied authority of one or any of the defendants herein? (Conditionally submitted and unanswered.)

"SPECIAL ISSUE NO. 3:

"Do you find from a preponderance of the evidence, if any, that the Defendants, or any of them, by a writing, adopted and confirmed the acts of the said Lewis O. Kelsey in entering into the agreements of January 12, 1953, being Plaintiff's Exhibits Nos. 3 and 5? We, the Jury, answer: They did."

■■ Thus it will be seen that if the judgment here entered is to stand it must be upon the finding that Lewis O. Kelsey had expressed authority from Gerald Johnson, or some of the appellants, to execute the letter agreements signed by him, dated January 12, 1953, in which he agreed that Johnson Oil Company would execute an instrument assigning a 1/64 of 5/8 free overriding royalty in the Ragland Lease to appellee, or upon the finding of the jury that the appellants, or any of them, by a writing, adopted and confirmed as their own act, the act of Lewis O. Kelsey in entering into the agreements of January 12, 1953.

Appellants assert by proper points that there is no evidence or that the evidence is insufficient to support these adverse findings. We overrule said points. The rule is that agency may be established by either direct testimony or by circumstances, such as the relation of the parties and their conduct concerning the transaction in controversy. Daugherty v. Wiles, Tex.Com.App., 207 S.W. 900; Stripling v. Hoing, Tex.Civ. App., 203 S.W.2d 1016; 2 Tex.Jur.2d, § 257.

Here the testimony of VerMilyea, together with admissions of Gerald Johnson, established that with knowledge of the agreements as made by the agent, Johnson did not question Kelsey's authority or the agreements in any way, but, on the contrary, recognized the agreements and executed the division order.

Johnson testified that he told Kelsey that he would not give an overriding royalty interest in order to obtain the pipe, but the jury did not have to believe his testimony. We find, after consideration of all the evidence, together with the facts and circumstances surrounding same, that there is sufficient evidence to support the jury's finding of express authority.

■■ We further find that in signing the division order which reflected appellee as owner of the same interest as agreed upon in the agreement in question, appellant Gerald Johnson ratified, by a writing, the agreement. It is true that an ordinary division order relating to the sale of oil and gas does not convey title to the royalty involved. Thompson v. Thompson, 149 Tex. 632, 236 S.W.2d 779. However, that is not the issue before us in view of the agreed issue on which this case was tried.

■ Johnson testified that he executed the division order for the sole purpose of paying off the note. The jury by their finding rejected this intention. It is our duty to review all the evidence to determine if there is sufficient evidence to support this finding. Fisher Construction Co. v. Riggs, 160 Tex. 23, 325 S.W.2d 126. After applying this rule, we find that there is sufficient evidence to support said finding to Question No. 3.

The judgment is affirmed.