CAR, LTD. and Sterling McCall, Appellants,

v.

James Bailey SMITH, Appellee.

No. B2047.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Oct. 17, 1979.

Rehearing Denied Nov. 7, 1979.

Simeon T. Lake, III, Fulbright & Jaworski, Houston, for appellants.

Henry P. Giessel, Alice Giessel, Talbert, Giessel & Stone, Paul L. Malloy, Jr., Houston, for appellee.

Before COULSON, SALAZAR and JUNELL, JJ.

COULSON, Justice.

Appellants, Car, Ltd. and Sterling McCall, appeal from a judgment rendered in favor of appellee, James Bailey Smith, in a suit for personal injuries arising from an automobile collision. The appeal is based on alleged errors in evidentiary rulings.

On September 24, 1975, between noon and 1:00 o'clock p. m. an automobile driven by Fernando Beasley and an automobile driven by appellee, James Bailey Smith, collided at the intersection of Brazos and Gray streets in Houston, Texas. Beasley was employed as a porter by Car, Ltd., an automotive repair business, and had been so employed since September 22, 1975, a period of three days. The automobile driven by Beasley was not owned by Beasley or by Car, Ltd., but by a customer and was in the possession of Car, Ltd. for repair.

Beasley's negligence was stipulated to be a proximate cause of the accident so that, aside from damages, the issue remaining

was whether Beasley was in the course and scope of his employment at the time of the accident. Appellee originally named Beasley as a defendant in the case, but Beasley was never served with process or deposed and did not participate in the trial.

In answer to Special Issue No. 1, ten jurors found that, at the time of the occurrence, Beasley was engaged in the service of Car, Ltd. and in the furtherance of its business. Ten jurors also found, in answer to Special Issue No. 2, that Car, Ltd. allowed Beasley to drive a car when it knew, or in the exercise of ordinary care should have known, that Beasley did not have a valid Texas Driver's License.

After the jury returned its verdict, appellants filed motions for judgment non obstante veredicto and to disregard findings of the jury. Each motion was overruled, and judgment was entered on the jury verdict awarding appellee damages in the total amount of $61,280.00. Appellants appeal from the final judgment.

Appellants' points of error can be considered in three general categories: (1) the admission of testimony from Joseph Constantino concerning statements allegedly made to him by Beasley shortly before the accident; (2) the exclusion of certain statements allegedly made by Beasley to James Meredith and Collier Wright after the accident; and (3) the no-evidence and insufficient evidence points raised with regard to Special Issue No. 1.

Appellants contend that Beasley took the customer's automobile from the premises of Car, Ltd. without the permission of his employers, for his own purposes, and thus was not acting within the course and scope of his employment at the time of the collision. However, Constantino, Beasley's roommate, who was in the automobile at the time of the accident, testified about statements made by Beasley to Constantino indicating that Beasley was on an errand for his employer. Constantino also testified concerning his own actions and observations. Approximately ten minutes before the accident Beasley picked up Constantino at his place of work in a downtown office building. Constantino stated that they were on the way to their apartment to eat lunch when the accident occurred. When Constantino got into the car there was a package or envelope on the front seat which Beasley placed in the back seat. Constantino did not know what was in the package, saw no writing on the package and was not told by Beasley what the package contained. Constantino's testimony included the following:

Question: What are the facts as to whether or not Fernando Beasley was in a hurry?

Answer: Yes, Fernando was in a hurry because he stated to me that his boss would be mad if he did not get the delivery done as quick as possible and told me "I need to hurry, I need to get this thing done."

Question: What did you and Fernando Beasley intend to do when you reached the destination toward which you were traveling at the time of the accident that occurred on or about September 24, 1975?

Answer: He was doing two things at once, getting lunch and delivering this package.

Question: State whether or not the trip that you and Fernando Beasley were making at the time of the accident on or about September 24, 1975, was a personal errand for you and Fernando Beasley.

Answer: It was nothing personal for me or Fernando. He had to deliver this package he had for his boss. We were going to stop and get lunch.

Question: Well, as far as you know, was Fernando Beasley on his own time when the accident occurred?

Answer: Not completely, no, he wasn't.

Question: Were any comments made by Fernando about that object?

Answer: Just that he was going to make some sort of delivery after lunch, or something along that line.

Question: But when Fernando made the comment about making a delivery, did he refer to this object?

Answer: No. He just said he had to deliver something for somebody, for whoever he worked with.

Question: You were going to eat lunch before Fernando delivered the parcel in the back seat?

Answer: That's what I thought, yeah.

Question: Was this a package that was to be delivered?

Answer: Supposedly. Yeah.

Question: Do you remember that immediately after the accident while everyone was still kind of excited about having had an accident Fernando made some statement about being late?

Answer: Yeah. Like I said, he took off immediately.

Question: What did he say at that time?

Answer: Something about his boss was going to be mad or something like that because he didn't do whatever he was supposed to do, and, of course, because he wrecked the car.

Question: And the package was to be delivered after you had gone to your apartment and eaten lunch; is that correct?

Answer: Supposedly. Yes.

Question: Do you know whether he was delivering the package for himself or for his employer?

Answer: For his employer. I know it had to be that.

■ Appellants argue that the foregoing testimony by Constantino was hearsay and thus was not admissible for purposes for proving Beasley's alleged agency relationship with appellants. While it is true that cases hold that an agency relationship may not be shown merely by declarations or · statements of the alleged agent, *McAfee v. Travis Gas Corporation*, 137 Tex. 314, 153 S.W.2d 442, 448 (1941), such testimony can be admitted in order to corroborate other testimony sufficient, prima facie, to show the fact of agency or employment. *McAfee v. Travis Gas Corporation, supra.*

■ Appellants admit that Beasley was in their employ on September 24, 1975, but contend that Beasley was under specific orders not to drive any car in the course of his employment. James Meredith, body shop manager for Car, Ltd. in September 1975, testified that the keys to customers' vehicles were kept in his office and that his permission was required to take the keys to a customer's car out of his office. Agency may be established either by direct testimony or by circumstantial evidence such as the relationship of the parties and their conduct concerning the transaction at hand. *Daugherty v. Wiles*, 207 S.W. 900 (Tex.Com. App. 1919, opinion adopted); *Johnson v. Texas Gulf Coast Corporation*, 359 S.W.2d 91 (Tex.Civ.App.-San Antonio 1962, no writ). Thus the jury could have concluded from the information they had that since Beasley was employed by Car, Ltd., had the keys to and was, in fact, driving a car which was in the possession of Car, Ltd., that Beasley was doing so with the permission of Meredith, Beasley's supervisor, and the person whose permission was required in order to obtain the keys to that car. The jury would then be entitled to consider Beasley's statements to Constantino in corroboration of an agency relationship circumstantially established between Beasley and Car, Ltd.

■ Constantino's testimony relating Beasley's statements about being on an errand for his boss was also admissible to show Beasley's state of mind and immediate purpose at the moment of speaking with regard to the trip he was making. *Davis v. Argonaut Southwest Ins. Co.*, 464 S.W.2d 102, 104 (Tex.1971); *Great American Indemnity Company v. Elledge*, 159 Tex. 288, 320 S.W.2d 328 (1959).

■ Appellants complain of the trial court's exclusion of certain testimony offered by James Meredith and Collier Wright concerning conversations they had with Beasley after the accident, wherein he stated that he did not have permission to take the customer's car. Appellants contend that these statements are admissible as declarations against interest by Beasley. To qualify as a declaration against interest, the statement must be known to the declarant, at the time of the utterance, to be in opposition to his pecuniary or proprietary interest. *Duncan v. Smith*, 393 S.W.2d 798 (Tex.1965). Additionally, the statements

**742**

are only admissible if the declarant is unavailable as a witness at the time of trial. *Liberty Mut. Ins. Co. v. Heard & Jones Drug St., Inc.*, 446 S.W.2d 911 (Tex.Civ. App.-Amarillo 1969, no writ). The statements attributed to Beasley were not against his pecuniary or proprietary interest when made. Beasley ran a red light and hit appellee's car. Whether he was driving the vehicle with his employer's permission and whether he was on an errand for his employer would in no way affect Beasley's own liability for his negligent act. Appellants would be entitled to sue Beasley for indemnification of their loss caused by Beasley's negligence. Thus Beasley's ultimate liability for his negligent act would not have been affected by his statement.

■ Although Beasley did not participate in the trial of the case, the record does not conclusively show that he was "unavailable." The use of a declaration against interest is analogous to the use of former testimony of an unavailable witness. In both instances the party offering the evidence must prove unavailability. In Texas this requires proof that the witness is dead, has become insane, is physically unable to testify, is beyond the jurisdiction of the court, his whereabouts is unknown and that diligent search has been made to find him, or he was kept away from the trial by the adverse party. *Hall v. White*, 525 S.W.2d 860, 862 (Tex.1975); *Lone Star Gas Co. v. State*, 137 Tex. 279, 153 S.W.2d 681, 697 (Tex.1941). 2C. McCORMICK & R. RAY, TEXAS LAW OF EVIDENCE, 1003 (Texas Practice 2d ed. 1956), states that the generally held view that the declarant must be shown to be dead before a declaration against interest can be received is unnecessarily strict. McCormick advocates that the use of the declaration be allowed when the party who offers it is, for any reason, unable to secure the testimony of the declarant. However, it would seem that a diligent search to determine the declarant's whereabouts should be required. The testimony in the present case was that neither Beasley's former employer nor his former roommate knew of his whereabouts at the time of trial and that the constable had been unable to serve Beasley at the

address provided. However, no proof of a diligent search to determine his whereabouts was offered. Thus, Beasley was not "unavailable" and a declaration against interest made by him would not be admissible.

■ Appellants maintain that there was no evidence or, in the alternative, insufficient evidence to allow submission of Special Issue No. 1 to the jury. We hold, however, in light of our discussion above, that there was competent evidence which the jury was free to consider in support of the submission of Special Issue No. 1. Therefore, appellants' no-evidence point is overruled.

*In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951), gives us guidance in the consideration of appellants' insufficient evidence points. We must weigh and consider all the evidence in the case, that supporting the verdict as well as that which may be contrary to the verdict. *In re King's Estate, supra*. After having considered all of the evidence, we find that there was sufficient evidence to support the submission of Special Issue No. 1 to the jury and to support the affirmative answer given to that special issue. Appellants' insufficient evidence point is therefore overruled.

All of the appellants' points of error have been duly considered and are overruled.

Affirmed.