Jackie Raymond LITTLE et al.

v.

Harold E. CLARK et ux.

No. 18193.

Court of Civil Appeals of Texas, Fort Worth.

Dec. 13, 1979.

Rehearing Denied Jan. 10, 1980.

Chester A. Oehler, Aubrey, for appellant.

Joe L. Orr, Fort Worth, for appellee.

## OPINION

MASSEY, Chief Justice.

Suit by plaintiff Harold E. Clark and his wife against defendants Jackie Raymond Little and Dorothy Little, his former wife, was for specific performance of contract of the defendants to sell and deliver to plaintiffs that which had been the homestead of the Littles prior to their divorce.

Trial was to the court without a jury, after which the court rendered judgment for the specific performance sought by plaintiffs. The defendants appealed.

We affirm.

By November 20, 1977 the Littles, then husband and wife, had accumulated an equity of some $12,000.00 in their home in Tarrant County. On that date they entered into written contract with a real estate agent named Morgan by which they authorized him to sell said property at a price of $33,500.00. The phrase of these parties' contract which is of material importance prescribed as follows:

> "The undersigned owner . . . [d]oes hereby grant to undersigned RE-ALTOR the exclusive right without reservation for a period ending mo. 2, day 22, yr. 78 @ 12:00 Midnight hereinafter called exclusive listing period, to sell for the sum of $33,500.00, or to sell or exchange on any other terms which are acceptable to owner, the above described property."

After said date Mrs. Little continued to reside on the premises. Little removed to the state of Iowa. There is evidence that the intention existed that the entire family would be removed to that state. However, a break up of the Little marriage was in the offing. Mrs. Little sued for divorce and there was a decree of divorce rendered in a District Court of Tarrant County, Texas. In the body of the divorce decree the following provision is to be found:

> "The Court finds that the parties have entered into a contract for sale of the home located at 728 Oakwood Avenue, Hurst, Texas, with Mr. and Mrs. Harold E. Clark, and more particularly described as follows:
>
> [here property description by lot and block number, etc.]
>
> "IT IS ORDERED that the above described property be sold and the Petitioner/Cross-Respondent [Mrs. Little] shall receive as her share of the equity the amount of Six Thousand and No/100 ($6,000.00) Dollars . . . ."

Antecedently, on January 8, 1978, pursuant to the contract of Littles for Morgan to sell their house, Morgan had caused to be effected a sales contract. It was of a standard form of realty contract. This contract, as proposed by the Clarks and tendered with their signatures (plus the memorandum of the agreement as necessary of Morgan, as agent for the Littles, and of one Grant, as agent for the Clarks), contained provisions common to such transactions to which it was necessary that the Littles agree, though the sales price was for $33,500.00. For example, there was a provision for possession of the premises to be delivered "Five days after closing", that "Seller agrees to make repairs required by VA (the Veterans' Administration), if any", and "Seller to pay normal closing costs including discount and appraisal fee".

At this point it is proper to mention that Mrs. Little desired changes therein, as, for example, to change the length of time to deliver possession to ten days, and to place a limit on the amount of repairs for which sellers would have responsibility at $200.00. There was no suggestion of complaint that the Littles should pay the appraisal fee. The changes desired by Mrs. Little were made, and they were agreed upon by the Clarks, so that aside from a question upon the enforceability of the contract because of the nature of its execution by the Littles there would be a firm contract of sale and purchase to be consummated at "closing".

The question upon the matter of enforceability, because of the nature of the execution of the contract, arose as follows: Little was in Iowa, while Mrs. Little was living in the house in Tarrant County. Because of this there was an inconvenience in obtaining Little's signature to the sales contract of January 8, 1978. Mrs. Little executed the contract for sellers, her husband and herself, by signing her own name and by signing the name of her husband. Morgan knew this was done. There was evidence that prior to the time Mrs. Little signed her husband's name to the contract Morgan conferred with Little over the telephone. Morgan did not testify that on this occasion Little had confirmed the authority of his wife to sign his name to the contract, but did indicate that the changes, if there were any to be made, should be submitted to and approved by Mrs. Little. Obviously Morgan treated what he heard to amount to approval should the wife sign the husband's name as well as her own. We are not aided by any testimony of Mrs. Little for she was not present on trial in the court below.

However, there was proof of a subsequent conversation of Morgan with Little over the telephone, at a time near that for which there would have been the anticipated "closing" of the parties' real estate transaction. Referring thereto Morgan testified as follows:

"Q. What was that occasion?

"A. When the mortgage company gave us the word that Mr. and Mrs. Clark's papers were all in and they looked fine at that time they ordered the appraisal. They do not order it normally until such time as the purchaser looks to be fine and one to be approved, and I called Mrs. Little and told her at that time we were ready for the appraisal check which would have been $65.00, and she said that I would have to call Jack, that she did not have $65.00. So, I in turn called him and told him that we needed $65.00 for the appraisal.

"Q. What did he do?

"A. He mailed a check for $65.00.

"Q. What did he tell you on the telephone?

"A. He said he would get it to me.

"Q. Was that before the 3rd of March?

"A. Yes, sir."

May 3, 1978 was the date the Judge in the Little's divorce suit signed the judgment heretofore mentioned. Trial of such case was begun on May 2, 1978, and Little was present on the occasion of that trial.

It is obvious from the record that Little subsequently returned to Tarrant County. He moved back into the house, settled with his former wife on her claim to the $6,000.00, and decided he *would not go* through with the contracted sale to the Clarks, but would keep the property as his own. He refused to consummate his contract with the Clarks and, thereupon, they brought suit for specific performance.

█ From the conversation we have set out between Morgan and Little concerning the matter of the Little payment of the cost of the real estate appraisal, and from inferences proper to be drawn therefrom, we conclude that there was both confirmation of the authority of his former wife to have signed his name to the contract of January 8, 1978, and a ratification of such contract as thereby effected for him by his then wife as agent. The trial court, sitting without a jury, was entitled to find agency and written contract made for Little through his agent, and to hold that he became bound

thereby, as well as his wife, so that the Clarks were entitled to recover on their suit for specific performance.

Written authority is not necessary to enable an agent to bind the principal in an executory contract for the sale of land. *Huffman v. Cartwright*, 44 Tex. 296, 298 (1875); *Rochelle v. Gibler*, 269 S.W.2d 515, 516 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n. r. e.); *Marlin v. Kosmyroski*, 27 S.W. 1042, 1044 (Tex.Civ.App., 1894, no writ). Oral authority is sufficient in this state to authorize an agent to bind his principal where the sale of realty is involved. *Adams v. Abbott*, 151 Tex. 601, 254 S.W.2d 78 (1952); *Smith v. Warth*, 483 S.W.2d 834 (Tex.Civ.App.—Waco 1972, no writ); *Rochelle v. Gibler, supra.*

Furthermore, parol evidence is admissible to establish the extent or existence of an agent's authority in the absence of any proof of such authority contained in a written instrument, such as a properly executed power of attorney. The parol evidence may be either direct testimony or proof of the surrounding circumstances, which may include the relationship between the parties or their conduct giving rise the contract in question. *Johnson v. Texas Gulf Coast Corporation, 359 S.W.2d 91* (Tex. Civ.App.—San Antonio 1962, no writ); *Stripling v. Hoing*, 203 S.W.2d 1016 (Tex.Civ. App.—Fort Worth 1947, no writ); 2 Tex. Jur.2d *Agency* p. 714 § 256 "Parol Evidence" (1959).

In addition to the above problems of proving an agency relationship, the principal may also ratify the acts of his agent. Where this is proved the ratification has the force and effect of making the contract that of the principal, despite the lack of his signature thereon, where the agent has signed it. *Martin v. Roberts*, 57 Tex. 564 (1882); *Johnson v. Tunstall*, 25 S.W.2d 828 (Tex.Com.App., 1930, jdgmt. adopted); *Taylor Const. Co. v. Clynch*, 196 S.W.2d 700 (Tex.Civ.App.—Amarillo 1946, no writ). Ratification can occur through acts, conduct or affirmative acquiescence by the principal. *Dowdell v. Ginsberg*, 244 S.W.2d 265

(Tex.Civ.App.—Fort Worth 1951, no writ); *Red Fish Boat Company v. Jarvis Press, Inc.*, 361 S.W.2d 588 (Tex.Civ.App.—Dallas 1962, no writ).

In the instant case, the evidence raised for factual determination questions on the agency authority of Mrs. Little when she signed her husband's name to the contract, and on the later ratification of her act in so doing by Little in his telephone conversation with Morgan. Furthermore, not only were such issues raised but the findings necessarily presumed to have been made by the court as the fact finder were not contrary to the greater weight and preponderance of the evidence.

All points of error have been examined; they are overruled whether or not expressly mentioned in the opinion.

The judgment is affirmed.